CHAMBERS OF
BETH P. GESNER
CHIEF UNITED STATES MAGISTRATE JUDGE
MDD_BPGchambers@mdd.uscourts.gov

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-4288
(410) 962-3844 FAX

March 4, 2020

Theodore A. Melanson, Esq.
Mignini, Raab & Demuth, LLP
606 Baltimore Ave., Ste. 100
Towson, MD 21204

Leah F. Golshani, Esq.
Social Security Administration
6401 Security Blvd.
Baltimore, MD 21235

Subject: Robert M. v. Andrew Saul, Commissioner, Social Security Administration,
Civil No.: BPG-19-345

Dear Counsel:

Pending before this court, by the parties' consent (ECF Nos. 4, 7), are Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion") (ECF No. 14), Defendant's Motion for Summary Judgment ("Defendant's Motion") (ECF No. 15), and Plaintiff's Response to Defendant's Motion for Summary Judgment ("Reply") (ECF No. 16). The undersigned must uphold the Commissioner's decision if it is supported by substantial evidence and if proper legal standards were employed. 42 U.S.C. §§ 405(g), 1383(c)(3); Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996), superseded by statute, 20 C.F.R. § 416.927(d)(2). I have reviewed the pleadings and the record in this case and find that no hearing is necessary. Loc. R. 105.6. For the reasons noted below, Plaintiff's Motion (ECF No. 14) and Defendant's Motion (ECF No. 15) are denied, the Commissioner's decision is reversed, and the case is remanded to the Commissioner for further consideration in accordance with this opinion.

I. **Background**

On April 24, 2015, plaintiff filed a Title XVI application for supplemental security income, alleging disability beginning on September 25, 2013. (R. at 297–302). His claims were initially denied on October 1, 2015 (R. at 227–30), and on reconsideration on December 22, 2015 (R. at 234–35). After a hearing held on October 25, 2017, an Administrative Law Judge ("ALJ") issued a decision on February 7, 2018, denying benefits based on a determination that plaintiff was not disabled. (R. at 31–51). The Appeals Council denied plaintiff's request for review on December 13, 2018, making the ALJ's opinion the final and reviewable decision of the Commissioner. (R. at 6–12). Plaintiff challenges the Commissioner's decision on the grounds that: (1) the ALJ erred at step five by setting forth an inadequate hypothetical to the vocational expert ("VE"); (2) the ALJ's step five determination is unsupported by substantial evidence; and (3) the ALJ's special technique analysis and subsequent residual functional capacity ("RFC") determinations are unsupported by substantial evidence.

## II. Discussion

First, plaintiff argues that the ALJ's RFC determination and step five conclusion were "unsupported by substantial evidence" because "the ALJ erred by setting forth an inadequate hypothetical." (ECF No. 15-1 at 9). The Fourth Circuit has explained that, "[i]n order for a [VE's] opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of [the plaintiff's] impairments." Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). "The ALJ, however, has great latitude in posing hypothetical questions and is free to accept or reject suggested restrictions so long as there is substantial evidence to support the ultimate question." Koonce v. Apfel, 166 F.3d 1209, at *5 (Table) (4th Cir. 1999).

Plaintiff argues that the hypothetical the ALJ posed to the VE was inadequate and unsupported by substantial evidence because the ALJ failed to define the limitation that precludes plaintiff from "fast pace, strict quota-based, assembly line, or production-type work." (ECF No. 14-2 at 10). Specifically, plaintiff contends that because this term is not defined in the DOT and the ALJ did not provide a specific definition, "the [VE] could not have been aware of the specific limitation contemplated by the ALJ." (Id.) Plaintiff relies on Thomas v. Berryhill to argue that "when the ALJ includes a limitation that is neither defined by regulation nor the DOT and is subject to interpretation, the ALJ must elaborate to the [VE] the precise parameters of the intended limitation." (Id. at 10–11) (citing Thomas, 916 F.3d 307). Defendant, however, relies on Perry v. Berryhill, 765 F. App'x 869, 872 n.1 (4th Cir. 2019), to argue that "descriptors" can "help[] to explain the restriction intended by the ALJ." (ECF No. 15-1 at 17) (explaining that the Fourth Circuit distinguished its Perry decision from an earlier case, Sizemore v. Berryhill, 878 F.3d 72, 80–81 (4th Cir. 2017), which provided that "additional context explaining that the claimant could perform work only in a 'low stress' setting, without any 'fast-paced production work' or 'public contact,'" "helped to explain the [non-production jobs] restriction intended by the ALJ"). Defendant argues that, like the ALJ in Sizemore, the ALJ here supported the RFC assessment by using "descriptors in the hypothetical illustrating an appropriate work environment" including "terms describing detailed restrictions to account for [plaintiff's] social and cognitive limitations." (Id. at 18). Defendant maintains that these "descriptors" provide "sufficient context to discern the ALJ's intentions when precluding 'fast pace assembly line, strict quota based or production rate work." (Id.) Moreover, defendant argues that the ALJ is not required to use terms only defined in the DOT and that the VE did not express confusion when responding to the hypothetical including the limitation regarding "no fast pace, strict quota-based, assembly line, or production-type work." (Id. at 19).

Plaintiff's argument, that when a limitation "is neither defined by regulation nor the DOT and is subject to interpretation, the ALJ must elaborate to the [VE] the precise parameters of the intended limitation," (ECF No. 14-2 at 10–11), is based on viewing the pace-related RFC limitation in a vacuum. As the Fourth Circuit explained in Perry, an RFC may contain descriptors that "provide additional context" which "help[] to explain the restriction intended by the ALJ, and allow[] [the court] to evaluate whether that restriction adequately accounted for the claimant's limitations.'" Perry, 765 F. App'x at 872 n.1. Here, the RFC contained both a limitation on "fast

pace, strict quota-based, assembly line, or production-type work," and descriptors similar to those identified in Sizemore. In Sizemore, the ALJ restricted claimant from "non-production jobs" and explained that claimant could perform "work only in [a] low stress [setting] . . . [without any] fast-paced work [or] public contact." Sizemore v. Berryhill, 878 F.3d 72, 79 (4th Cir. 2017); see also Perry, 765 F. App'x at 872 n.1. Here, the RFC contained additional descriptors such as the ability to tolerate only "occasional[] changes in the workplace," "no tandem tasks or teamwork," and "no face-to-face interaction with the general public while performing work tasks." (R. at 40). When looking at the pace-related limitation in plaintiff's RFC in the context of the RFC as a whole, it is clear that the ALJ provided sufficient context and detail to allow the VE to understand the hypothetical presented by the ALJ. Accordingly, the undersigned finds that the RFC and the ALJ's step five determination are supported by substantial evidence and remand is not warranted on this issue.

Plaintiff's second argument is that the ALJ's step five determination was unsupported by substantial evidence. (ECF No. 14-2 at 13). At step five, "the ALJ considers the claimant's age, education, work experience, and residual functional capacity to decide whether he can perform alternative work that exists in significant numbers in the national economy." Pearson v. Colvin, 810 F.3d 204, 207 (4th Cir. 2015) (citing 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c)). At this step, "the Commissioner bears the burden to prove that the claimant is able to perform alternative work." Id. (citing Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987)). "To answer this final question—whether sufficient other work exists for the claimant in the national economy—the ALJ 'rel[ies] primarily'" on the Dictionary of Occupational Titles ("DOT"). Id. (citing Social Security Ruling 00–4p, 2000 WL 1898704 (Dec. 4, 2000), at *2). ALJs may also utilize vocational experts ("VEs") "to address complex aspects of the employment determination, including the expert's observations of what a particular job requires in practice or the availability of given positions in the national economy." Id. At ALJ hearings, however, the ALJ must "'inquire, on the record, . . . whether' the vocational expert's testimony 'conflict[s]' with [the DOT], and also requires that the ALJ 'elicit a reasonable explanation for' and 'resolve' conflicts between the expert's testimony and [the DOT]." Id. at 207–08. "The ALJ must, by determining if the vocational expert's explanation is 'reasonable,' resolve conflicts 'before relying on the [vocational expert's] evidence to support a determination or decision about whether the claimant is disabled.'" Id. at 208.

Here, plaintiff argues that the ALJ's finding at step five "is not supported by substantial evidence because that finding relies on VE testimony that apparently conflicts with the DOT and that the ALJ never resolved the apparent conflict in accordance with SSR 00-4p." (ECF No. 14-2 at 17). Specifically, plaintiff argues, the ALJ restricted plaintiff to work "consisting of no more than 'short and simple instructions.'" (Id.) Nonetheless, the VE testified at the ALJ hearing that plaintiff could perform the occupations of clerical checker (DOT 222.687-010) and inspector of electronics (DOT 726.684-050), both of which require a Reasoning Development Level 2 under the DOT. (Id.) According to the DOT, a Reasoning Level of 2 requires the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and "[d]eal with problems involving a few concrete variables in or from standardized situations." Dictionary of Occupational Titles, App. C, 1991 WL 688702. The Fourth Circuit has explained that there is "'an apparent conflict' between a limitation to 'short, simple instructions' . . . and a

need to carry out 'detailed but uninvolved . . . instructions' (as found in jobs requiring Level 2 reasoning)." Thomas, 916 F.3d at 313. Accordingly, here, the ALJ "should have identified the apparent conflict and explored the issue with the VE to determine whether" plaintiff was capable of performing such work. Michael C. v. Comm'r, Soc. Sec. Admin., Civil No. SAG-18-1808, 2019 WL 2330046, at *2 (D. Md. May 31, 2019).

Defendant argues that, even if the ALJ erred in failing to identify this conflict, "this error is harmless because no such conflict exists for the nut sorter occupation"(DOT 521.687-086), which is the remaining occupation that the VE identified for a hypothetical person with plaintiff's RFC. (ECF No. 15-1 at 22). Plaintiff disagrees, however, and argues that the job of sorter "apparently conflicts" with the RFC limitation precluding plaintiff from "fast pace, strict quote-based, assembly line, or production-type work." (ECF No. 14-2 at 18–19). Plaintiff maintains that the pace of this occupation, which involves observing nut meats on a conveyor belt and picking out broken, shriveled, and wormy nuts and foreign matter, "is dictated by the speed at which he nuts pass along the conveyor." (Id. at 19). Plaintiff further argues that the nut sorter's use of a conveyor "suggests that [p]laintiff would be required to maintain this pace in the same way that an assembly worker would be required to keep up with the assembly line." (Id.) Defendant argues that "[n]othing in the DOT's description indicates that the nut sorter position requires the worker to keep up with any particular production pace or a passing conveyor belt." (ECF No. 15-1 at 23). Instead, defendant maintains that the worker controls the pace of the conveyor belt and it is only used after the worker performs the function of sorting the nuts. (Id.) Further, defendant asserts that the "VE demonstrated acute awareness of the ALJ's intent to preclude 'fast pace assembly line, strict quota based or production rate work'" because when presented a hypothetical with these limitations, the VE removed one occupation he had previously recommended, stating that he removed this occupation due to that exact restriction. (Id.) Specifically, the VE excluded the small product assembler occupation which requires the worker to perform repetitive tasks on an assembly line. (Id.)

Based upon a review of the record, the undersigned concludes that the ALJ did not identify and reconcile inconsistences between the VE's testimony and the DOT as it relates to the nut sorter occupation. The DOT description of the nut sorter occupation states that the worker "[o]bserves nut meats on conveyor belt, and picks out broken, shriveled, or wormy nuts and foreign matter, such as leaves and rocks." Dictionary of Occupational Titles, App. C, 1991 WL 674226. This task of looking at items on a conveyor belt and removing specific items conflicts with an RFC precluding fast paced, assembly line work. See Morrison v. Berryhill, Civil 2:18-116, 2019 WL 2413314, at *8 (N.D. W. Va. May 23, 2019) (finding that the DOT description of sorter, which "specifically describes looking at products on a conveyor belt and picking out non-conforming objects from conforming objects . . . would appear to conflict with Plaintiff's RFC which contains no rapid pace or strict production quotas"); see also Coleman v. Berryhill, Civil No. 1:16-3465, 2018 WL 1417524, at *5 (D.S.C. Mar. 22, 2018) (stating that "the DOT definition of the 'nut sorter' job suggests that the worker would be required to remove defective product and foreign matter from a conveyer belt within a time constraint"). Accordingly, on remand, the ALJ should explore, explain, and resolve the conflict identified herein between the VE's testimony and the DOT .

Plaintiff's third argument is that the ALJ's special technique analysis and subsequent RFC are unsupported by substantial evidence. (ECF No. 14-2 at 20). In evaluating the severity of mental impairments, the ALJ must use a "special technique," which requires separate evaluations on a five-point scale of how the plaintiff's mental impairment impacts four functional areas: "understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." 20 C.F.R. §§ 404.1520a(c), 416.920a(c). The ALJ must incorporate the results of the evaluations in each functional area into the ALJ's findings and conclusions. 20 C.F.R. §§ 404.1520a(e), 416.920a(e). The role of this court on review is to determine whether the ALJ applied correct legal standards and whether substantial evidence supports the ALJ's decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is that which a reasoning mind would accept as sufficient to support a particular conclusion. Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

Plaintiff argues that the ALJ's cursory analysis of plaintiff's mental impairment does not comport with the requirements of the special technique. (ECF No. 14-2 at 22–23). Specifically, plaintiff asserts that the ALJ merely "recited examples of areas in which concentration, persistence, or pace could be limited" and the ALJ's analysis in this area "is devoid of any discussion of [p]laintiff's subjective complaints." (Id. at 21). Further, plaintiff argues that "the ALJ erroneously assessed plaintiff's RFC . . . by failing to conduct a function-by-function assessment of his ability to perform mental demands of competitive work." (Id. at 24). Defendant contends that the ALJ's RFC assessment is supported by substantial evidence because the ALJ considered plaintiff's subjective complaints, treatment records, mini mental status examination score, and plaintiff's daily activities in determining that plaintiff had moderate limitations in concentration, persistence, or pace. (ECF No. 15-1 at 10). Specifically, defendant argues that in determining plaintiff had only a moderate limitation in this area, the ALJ acknowledged plaintiff's "inability to focus" in a consultative examination, but also noted other examinations which indicated that plaintiff demonstrated goal directed thought processes, intact memory and reasoning ability, and good concentration and memory functions. (Id. at 10). Moreover, defendant asserts that the ALJ explicitly accounted for plaintiff's moderate limitations in concentration, persistence, or pace by limiting plaintiff to "no fast pace, strict quota-based, assembly line, or production-type work." (Id. at 11).

Here, when applying the special technique, the ALJ concluded that plaintiff had a moderate limitation with regard to concentrating, persisting, or maintaining pace. (R. at 39). The ALJ provided examples of areas in which concentration, persistence, or pace could be limited, but did not correlate those examples to any of plaintiff's complaints or treatment records which were relevant to this analysis. (Id.) Although the ALJ accounted for this limitation in the RFC, the ALJ failed to conduct an evaluation with regard to concentrating, persisting, or maintaining pace such that "a reasoning mind would accept as sufficient to support a particular conclusion." Laws, 368 F.2d at 642; see also Mascio v. Colvin, 780 F.3d 632, 637 (4th Cir. 2015) (refusing to hold that ALJ's lack of reasoning constituted harmless error "[b]ecause we are left to guess about how the ALJ arrived at his conclusions" regarding an RFC assessment). Accordingly, on remand the ALJ

should provide additional analysis as it relates to plaintiff's moderate limitation with regard to concentrating, persisting, or maintaining pace.

### III.     Conclusion

For the reasons stated above, Plaintiff's Motion (ECF No. 14) and Defendant's Motion (ECF No. 15) are DENIED. Pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's judgment is REVERSED due to inadequate analysis. The case is REMANDED for further consideration in accordance with this opinion.

Despite the informal nature of this letter, it will constitute an Order of the court and will be docketed accordingly.

Very truly yours,

/s/

Beth P. Gesner
Chief United States Magistrate Judge